UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. HASKINS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EMPLOYERS INSURANCE OF WAUSAU, et al.,<br><br>Defendants. | Case No.  14-cv-01671-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 46 |

Before the Court is Plaintiffs Richard E. Haskins, Arthur L. Haskins, and the estate of Arthur "Buzz" Haskins, Jr. (collectively, "Plaintiffs") motion for partial summary judgment that the liability insurer for their property, Employers Insurance of Wassau ("Wassau"), owed them a duty to defend against a counterclaim filed against them in an underlying environmental cleanup action.

**I.    BACKGROUND**

   **A.    Factual Background**

Plaintiffs own commercial property in South San Francisco.  Wassau provided Plaintiffs with policies covering comprehensive general liability insurance for this property from 1958 to 1986 ("the policy").[1]  Cherokee Acquisition Corp., Cherokee San Francisco LLC, and Cherokee Grand Avenue LLC ("Cherokee") purchased property adjoining Plaintiffs' in 1999, at which time they performed an environmental cleanup before selling the property in 2000.  Cherokee failed to complete the cleanup prior to the sale and entered into a workplan with Plaintiffs to address

---

[1] Although the parties agreed to multiple policies during this period, several of which are attached as Exhibit 1 to Plaintiffs' motion, ECF Nos. 36-1 through 36-7, neither party contends that the policy language regarding the duty to defend varies meaningfully.  Accordingly, the policies will be referred to collectively throughout this order.

1   remaining contamination at the Site.

2   When Cherokee failed to perform as Plaintiffs expected under the plan, Plaintiffs brought a
3   lawsuit against them in this District on October 20, 2011.  Haskins v. Cherokee Grand Avenue
4   LLC, Case No. 3:11-cv-05142-JST ("Haskins I") at ECF No. 1.  Cherokee answered and filed a
5   "counterclaim for cost recovery and contribution" on January 30, 2012, seeking declaratory relief
6   under 42 U.S.C. Section 9613(g)(2) and cost recovery under 42 U.S.C. 9607(a).  Haskins I at ECF
7   No. 18.

8   Plaintiffs tendered the counterclaim to Wassau and requested a defense.  Wassau did not
9   agree to defend Plaintiffs against the counterclaim, but offered to pay to settle the counterclaim.

**B.     Jurisdiction**

The Court has jurisdiction under 28 U.S.C.§ 1332(a)(1) as the parties are citizens of different states and the amount in controversy exceeds $75,000.

**C.     Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the disputed fact might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The court must draw all reasonable inferences in the light most favorable to the non-moving party.  Johnson v. Rancho Santiago Cmt. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010).

**II.    ANALYSIS**

The only issue currently before the Court is whether Wassau owed Plaintiffs a duty under the policy to defend them against Cherokee's counterclaim in the underlying litigation.[2]  Wassau

---

[2] The parties' briefing discusses at length the negotiations surrounding the settlement ultimately reached between Plaintiffs and Cherokee, which Wassau alleges was collusive. These details are not relevant to resolution of the instant partial summary judgment motion, which Plaintiffs insist concerns only the issue of whether, once Cherokee filed a counterclaim in the underlying action, Wassau had a duty to defend Plaintiffs against that counterclaim. ECF No. 46 at 4 (Plaintiffs state that the motion "presents only *one* issue for the Court to decide: whether Defendants had a duty to defend Plaintiffs against a counterclaim filed against them in an underlying suit.") Plaintiffs do

does not dispute that the policy contained a provision requiring Wassau to "defend any suit against the insured seeking damages" on account of property damage.  See, e.g., ECF No. 36-3 at 0025.  The main dispute between the parties is whether, under California law, a counterclaim is defined as a "suit" for the purposes of an insurer's duty to defend.  Plaintiffs argue that Cherokee's counterclaim was an affirmative suit for damages that triggered Wassau's duty to defend under the policy.  Wassau contends that the counterclaim was filed by Cherokee "purely for defensive purposes" in order to seek an offset against Plaintiffs' affirmative claim, making it functionally equivalent to an affirmative defense rather than a lawsuit.  ECF No. 40 at 9.

Under California law, "[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."  Montrose Chem. Corp. v. Superior Court, 861 P.2d 1153, 1157 (Cal. 1993) (internal quotations and citation omitted).  Thus, "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy."  Id.  "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."  Id. at 1160.

The Court observes initially that in Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 959 P.2d 265, 286 (Cal. 1998), as modified (Sept. 23, 1998), the California Supreme Court announced the "bright-line rule" that, for the purposes of the duty to defend, "a 'suit' is a court proceeding initiated by the filing of a complaint."  Because Cherokee's counterclaim took the form of a court proceeding in which Cherokee filed a two-count complaint in addition to its answer, Foster-Gardner indicates that the counterclaim potentially sought damages within the coverage of the policy, triggering Cherokee's duty to defend.

In support of the notion that insurers need not defend an insured against a counterclaim under these circumstances, Defendants rely largely on Great American Ins. Co. v. Chang, No. 12-00833-SC, 2013 WL 3153279, at *1 (N.D. Cal. June 19, 2013) reconsideration denied sub nom.

---

not seek summary judgment as to the question of whether Wassau breached its alleged duty. Although Wassau argues that Plaintiffs' actions in rejecting a settlement that Wassau reached with Cherokee violated the policy's cooperation clause, resulting in Plaintiffs' assumption of responsibility for their own defense, this argument goes to the question of breach, an issue not currently before the Court.  Id. at 10.

Great Am. Ins. Co. v. Chang, No. 12-00833-SC, 2013 WL 3965420 (N.D. Cal. July 31, 2013).  In that case, insured plaintiffs owned a property that was contaminated with chemicals leaking from underground storage tanks.  Id. at *1.  After a lessee brought a nuisance suit against the plaintiffs, the plaintiffs filed a cross-complaint against other parties who had used the property, alleging that those parties were responsible for the contamination.  Id. at *2.  Those parties then filed cross-complaints against the insured plaintiffs, "seeking indemnity and contribution for any damages for which they were held liable."  Id.  The plaintiffs sought to recover from the insurer for costs relating to the defense of these cross-complaints.  Id. at *9.  The insurer argued that the duty to defend under the policy, which required the insurer to defend "any suits against the [insured] seeking damages," was not triggered by the cross-complaints, as they merely sought "to reduce any liability the cross-complainants may be found to have to the [plaintiffs]" and did not "seek affirmative recovery."  Id.  The court agreed with the insurer, finding that the "cross-complaints in this action are almost exclusively defensive."  Id. at *10.

In reaching this conclusion, the court relied on the California Court of Appeal's decision in CDM Investors v. Travelers Casualty and Surety Co., 139 Cal.App.4th 1251 (2006).  The plaintiffs in that case, who owned commercial property, sued former tenants under CERCLA[3] to apportion liability for response costs the State Water Board had ordered them to pay.  "The tenants raised affirmative defenses seeking to apportion responsibility to plaintiffs."  Great American, 2013 WL 3965420 at *9.  Although the plaintiffs claimed that the affirmative defenses were the "functional equivalent of a counterclaim," the court concluded that "an affirmative defense would only constitute a suit seeking damages for the purposes of the policy if the affirmative defense 'would unquestionably have been a suit for damages if asserted in a court of law.'"  Id. (quoting CDM, 139 Cal.App.4th at 1269).  The court concluded that the tenants "had no independent suit against plaintiffs that they sought to reduce to a monetary value by asserting it as a setoff payment for the liability that plaintiffs was [sic] alleging against them."  Id. (internal alterations omitted).  Because the tenants "could not have sued plaintiffs for anything" in the absence of the CERCLA

---

[3] The Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675.

1  proceeding, the tenants' indemnity claim was purely defensive—it sought and functioned only to
2  reimpose upon plaintiffs what plaintiffs were already legally obligated for." Id. (internal
3  alterations omitted).

4      Importantly, CDM concluded that under California Supreme Court precedent, "a setoff
5  affirmative defense could constitute a suit seeking damages for purposes of" the duty to defend
6  under a comprehensive general liability policy "if the affirmative defense (1) would
7  unquestionably have been a suit for damages if asserted in a court of law, and (2) fell within the
8  scope of the contractual obligation." CDM, 139 Cal. App. 4th at 1269 (citing Construction
9  Protective Services, Inc. v. TIG Speciality Ins. Co., 29 Cal. 4th 189 (2002)).  The CDM court
10 found that the plaintiffs had failed to satisfy the first prong, as the tenants could not have brought
11 an "independent suit" against plaintiffs because the tenants did not have any obligations imposed
12 upon them by the State Water Board related to the contamination for which they could have
13 brought suit against the property owners. Id.  The tenants' affirmative defenses arose only after
14 the property owners had sought contribution from the tenants for litigation that had been brought
15 against the property owners.  Therefore, in the absence of the property owners' affirmative claim
16 against the tenants, the tenants would not have had an "independent suit" against the property
17 owners relating to the contamination and the counterclaims were not covered under the duty to
18 defend. Id.  Great American similarly involved counterclaims brought by former tenants against
19 property owners.  The former tenants in both of these cases could not have pursued affirmative
20 claims against the property owners relating to the contamination of the property in question, but
21 could only seek to offset their damages by bringing counterclaims or affirmative defenses against
22 those property owners' suits.

23     Therefore, the critical question in resolving whether that duty to defend was triggered by
24 Cherokee's counterclaim is whether that counterclaim "would unquestionably have been a suit for
25 damages if asserted in a court of law" within the meaning of CDM. Id.[4]  Looking to the cross-
26 complaint filed by Cherokee in the underlying action, Haskins I at ECF No. 18, Cherokee alleged

---

[4] It is undisputed that a duty to defend fell within the scope of the policy under the first prong of CDM.

5

that it had "incurred necessary costs of response at the San Bruno Channel Site consistent with the National Contingency Plan under CERCLA, 42 U.S.C. Section 9601 et seq.," for which it was "entitled to recover from" Plaintiffs pursuant to 42 U.S.C. 9607(a).  Id.  Cherokee thus alleged that it had already incurred costs for which Plaintiffs were liable pursuant to a statute.  Unlike in CDM and Great American, where the formers tenants had no claim against the insured until the insured brought a claim against them, Cherokee could have brought the counterclaim as an "independent suit" even in the absence of the insured's prosecution of the underlying suit.  The Court therefore concludes that the counterclaim triggered Wassau's duty to defend under the policy.

### III. CONCLUSION

The Court hereby grants Plaintiffs' motion for summary judgment that Wassau owed a duty to defend them against Cherokee's counterclaims in the underlying litigation.  The Court again notes that Plaintiffs have not requested summary judgment on any other issue, including the questions of whether Wassau breached that duty or whether Plaintiffs took action that resulted in the forfeiture of that duty.

**IT IS SO ORDERED.**

Dated:  February 23, 2015

_____
JON S. TIGAR
United States District Judge