UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. HASKINS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EMPLOYERS INSURANCE OF WAUSAU, et al.,<br><br>　　　　Defendants. | Case No.  14-cv-01671-JST<br><br>**ORDER 1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND 2) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 61, 66 |

Before the Court are cross-motions for partial summary judgment. Plaintiffs Richard E. Haskins, Arthur L. Haskins, and the estate of Arthur "Buzz" Haskins, Jr. (collectively, "Plaintiffs") seek summary judgment that Defendant Employers Insurance of Wausau ("Wausau") breached its duty to defend them against a counterclaim filed against them in an underlying environmental cleanup action. Wausau seeks summary judgment that it did not breach its duty to defend. Because the Court concludes that Wausau satisfied its duty to defend by settling all claims against Plaintiffs, it will deny Plaintiffs' motion and grant Wausau's motion.

**I.   Background**

　**A.   Factual Background**

Plaintiffs own commercial property in South San Francisco. Haskins v. Employers Ins. of Wausau, No. 14-CV-01671-JST, 2015 WL 831184, at *1 (N.D. Cal. Feb. 23, 2015). Wausau provided Plaintiffs with policies covering comprehensive general liability insurance for this property from 1958 to 1986 ("the policy"). Id. Cherokee Acquisition Corp., Cherokee San Francisco LLC, and Cherokee Grand Avenue LLC ("Cherokee") purchased property adjoining Plaintiffs' in 1999, at which time they performed an environmental cleanup before selling the property in 2000. Id. Cherokee failed to complete the cleanup prior to the sale and entered into a

1  workplan with Plaintiffs to address remaining contamination at the Site.  <u>Id.</u>

2  When Cherokee failed to perform as Plaintiffs expected under the plan, Plaintiffs sued them on October 20, 2011.  <u>Haskins v. Cherokee Grand Avenue LLC</u>, Case No. 3:11-cv-05142-JST ("<u>Haskins I</u>") at ECF No. 1.  Cherokee answered and filed a "counterclaim for cost recovery and contribution" on January 30, 2012, seeking declaratory relief under 42 U.S.C. Section 9613(g)(2) and cost recovery under 42 U.S.C. 9607(a).  <u>Haskins I</u> at ECF No. 18.

Plaintiffs tendered the counterclaim to Wausau on January 30, 2012 and requested a defense.  ECF No. 67-3.  Harold Moore, a claims handler for Wausau, responded to the notice letter on February 13, 2012, stating that Wausau was "conducting a policy search to determine policies that may or may not potentially apply" to the underlying litigation and stating that Wausau reserved its rights.  ECF No. 41-1 at 1.  Moore's letter noted that, because Cherokee acquired title to the property in June of 1999 and the Wausau policies were issued prior to 1986, it appeared Wausau had "no duty to defend."  <u>Id.</u>  The letter requested additional information from Plaintiffs regarding the claim.  <u>Id.</u> at 3-5.  Plaintiffs responded on February 21, 2012, providing Wausau with answers in response to some of its inquiries, but also stating that the letter "asks for a great deal of information that is not readily available" to Plaintiffs.  ECF No. 67-5.

On March 21, 2012, Moore sent another letter to Plaintiffs, representing that Wausau continued to reserve its rights.  ECF No. 41-2.  The letter again requested substantial amounts of information from Plaintiffs regarding the claim.  <u>Id.</u>  Plaintiffs responded that Wausau's letter requested some information that Plaintiffs had already provided to Wausau in response to their previous letter, but also provided responses regarding the new information requested.  ECF No. 67-7.

In April 2012, Moore directed Bryan Barber, Wausau's coverage attorney, to approach Cherokee's attorneys regarding the possibility of settling the counterclaim.  ECF No. 41 at ¶ 5.  On April 26, 2012, Barber wrote to Plaintiffs' lawyer Bret A. Stone regarding the possibility of settlement.  ECF No. 67-8.  Barber informed Stone that Wausau intended to contact Cherokee's attorney regarding settling the counterclaim.  <u>Id.</u>  Barber recalled that Stone had previously stated

that he would object to such a settlement and asked Stone to "detail in writing any objections to our contribution." Id.

On May 7, 2012, Stone responded that Plaintiffs did "not object to Wausau's efforts to settle the counterclaim," but that they desired "to be included in all communications with opposing counsel in order to make sure their interests are protected and would not be prejudiced by any potential settlement." ECF No. 67-9.

Stone wrote Barber on July 27, 2012, stating that Plaintiffs were concerned about the possibility that Wausau would stipulate to a dismissal of Cherokee's claims for future costs without prejudice. ECF No. 67-10. Stone stated that Plaintiffs "consider a complete dismissal with prejudice an essential term for both insured and insurer." Id. Stone further stated that, although plaintiffs had tendered their claim January 30, 2012, "Wausau has not accepted its defense obligation." Id. Stone stated the Plaintiffs' position that this was in violation of Title 10, Section 2695.7 of the California Code of Regulations, which Stone read to require an insurer "to accept or deny a claim within 40 days." Id. Stone asked Barber to provide Plaintiffs with Wausau's coverage position. Id.

On August 8, 2012, Barber responded that Wausau had successfully settled Cherokee's counterclaim for past costs, which would eliminate Plaintiffs' exposure for costs incurred by Cherokee as of the date of the settlement. ECF No. 67-11. Barber stated that Wausau intended to move forward with the settlement and would do so if it did not hear from Plaintiffs by the close of business that Friday, August 10, 2012. Id. Barber stated that if plaintiffs continued to object to the settlement, they would "be assuming defense and indemnity of the counterclaim at [Plaintiffs'] sole costs and Wausau would have no obligation to reimburse Haskins for any costs of defense or indemnity related to the tendered counterclaim." Id.

Stone responded on August 10, 2012, renewing Plaintiffs' argument that the counterclaim sought future costs and refusing to respond to Wausau's demand that Plaintiffs object by August 10, 2012. ECF No. 67-12. Barber countered that Plaintiffs' assent to the settlement was not required and Wausau intended to go forward with the settlement. ECF No. 67-13. Barber asked

3

Stone to forward to Wausau information regarding any "reasonable and necessary defense costs that have been incurred to defend Haskins from Cherokee's counterclaim." Id.

Plaintiffs refused to sign the settlement agreement. Barber informed Plaintiffs on September 11, 2012 that they had breached their duty to cooperate in settling the Counterclaim and had thereby assumed their own defense. ECF No. 67-15. Wausau and Cherokee confirmed agreement to the settlement on February 4, 2013, and Cherokee filed a motion for leave to file a dismissal of the counterclaim without prejudice on February 5, 2013. See Haskins I at ECF No. 68. The motion stated that Cherokee would "dismiss their claims for recovery of environmental responses incurred on or before July 24, 2012 with prejudice," but sought "to dismiss their counterclaims without prejudice as to any claims for recovery of environmental responses costs that counterclaimants may incur after July 24, 2012." Id. at 2. Plaintiffs opposed the motion in the District Court, stating that "Haskins would suffer plain legal prejudice if Cherokee's counterclaim is dismissed without prejudice," because Haskins had already undertaken preparation for its defense against claims for future costs. Id. at ECF No. 75.

On March 8, 2013, Plaintiffs informed Wausau that Plaintiffs and Cherokee would be returning to mediation. Wausau declined to attend. At the mediation, Cherokee and Plaintiffs reached a settlement, which provided for: "(1) entry of judgment for Cherokee and against Plaintiffs on Cherokee's counterclaim in the amount of $1.7 million, executable only against Plaintiffs' insurance assets, with such recovery, if any, generally to be deposited in the San Bruno Channel Remediation Trust ('Remediation Trust'); (2) assignment of such judgment to the Remediation Trust; (3) appointment of Plaintiff Richard Haskins as Trustee of the Remediation Trust generally without compensation; (4) dismissal with prejudice of Plaintiffs' First Amended Complaint; (5) deposit by Cherokee of $150,000 into an attorney trust fund; and (6) transfer of that money ($150,000) into the Remediation Trust if, within five years, $1.2 million is deposited into the Remediation Trust from any source." Haskins II at ECF No. 56; Haskins I at ECF No. 106.

On March 19, 2013, Cherokee withdrew its motion for leave to file dismissal of its

counterclaims without prejudice.  Haskins I at ECF No. 91.  Cherokee subsequently filed a stipulation with a proposed order for entry of judgment outlining the settlement terms negotiated with Haskins.  Haskins I at ECF No. 106.  Wausau did not join the stipulation.  Id.  On August 12, 2013, this Court approved the stipulation.  Haskins I at ECF No. 108.

### B. Procedural History

On April 10, 2014, Plaintiffs filed the complaint in the instant litigation, seeking to recover the amount of the stipulated judgment from Wausau, as well as damages for the breach of the contractual duty to defend in the underlying litigation and the breach of the implied covenant of good faith and fair dealing.  ECF No. 1.

On October 3, 2014, Plaintiffs filed a motion for partial summary judgment that Wausau had a contractual duty to defend Plaintiffs against Cherokee's counterclaim.  ECF No. 35.  The Court concluded that Wausau owed Plaintiffs a duty to defend against the counterclaim under the terms of the policy.  See generally Haskins v. Employers Ins. of Wausau, No. 14-CV-01671-JST, 2015 WL 831184 (N.D. Cal. Feb. 23, 2015).  The Court limited its ruling to the question of whether "once Cherokee filed a counterclaim in the underlying action, Wausau had a duty to defend Plaintiffs against that counterclaim," noting that Plaintiffs had not sought summary judgment on the question of whether Wausau's response to the tender constituted a breach of the duty.  Id. at *1, n. 2.

### C. Jurisdiction

The Court has jurisdiction under 28 U.S.C.§ 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

### D. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the disputed fact might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986). The court must draw all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Rancho Santiago Cmt. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010).

## II.     Whether Wausau Failed to Provide an Immediate Defense

Plaintiffs first argue that Wausau breached its duty to defend by failing to accept or deny Plaintiffs' tender of the counterclaim within 40 days, a duty they locate in 10 Cal. Code Regs. Section 2695.7(b). Plaintiffs also argue that Wausau effectively never accepted its duty to defend, because it never stated its coverage position in response to the tender. Wausau responds that Section 2695.7(b) does not control claims made under the duty to defend and that it assumed the duty to defend by attempting to negotiate a settlement with Cherokee. Wausau also contends that the time required to investigate and follow up with Plaintiffs was necessary to determine coverage, because the facts underlying the claim spanned a period of decades. ECF No. 74 at 8.

### A.     Alleged Per Se Breach of Regulations

Plaintiffs cite 10 California Code of Regulations Section 2695.7(b) for the proposition that an insurer's failure to accept or deny a claim within 40 days of tender is a per se breach of the duty to provide an immediate defense. That regulation, under the heading "Standards for Prompt, Fair, and Equitable Settlements," states that "[u]pon receiving proof of claim, every insurer, except as specified in subsection 2695.7(b)(4) below, shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety." 10 C.C.R. § 2695.7(b). The regulations define "proof of claim" as "any evidence or documentation in the possession of the insurer, whether as a result of its having been submitted by the claimant or obtained by the insurer in the course of its investigation, that provides any evidence of the claim and that reasonably supports the magnitude or the amount of the claimed loss." 10 C.C.R. § 2695.2(s).

Wausau argues, and the Court agrees, that an insured's tender of a claim for defense to its insurer is not a "proof of claim." An insured's tender of a claim for defense does not ask the insurer to pay for a preexisting loss, but rather asks the insurer to provide a defense to the insured going forward. Unlike in the former situation, "the 'magnitude or the amount of the claimed loss'

6

is generally unknown at the time that an insured asks an insurer to defend a legal action." ECF No. 69 at 13 (quoting Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2013 WL 1411135, at *12 (N.D. Cal. Apr. 8, 2013) on reconsideration in part sub nom. Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2013 WL 4528937 (N.D. Cal. Aug. 26, 2013) (hereinafter Travelers Prop. (Conti)). Therefore, the regulation's statements regarding what constitutes a prompt response to a "proof of claim" do not govern Wausau's response to Plaintiffs' tender.

Wausau argues that Plaintiffs' tender of the counterclaim instead constituted a "notice of legal action" under the regulations. Id. at 8 (citing Travelers Prop. (Conti), 2013 WL 1411135, at *11). The regulations define a "notice of legal action" as "notice of an action commenced against the insurer with respect to a claim, or notice of action against the insured received by the insurer, or notice of action against the principal under a bond, and includes any arbitration proceeding." 10 C.C.R. § 2695.2(o). Here, the Court does not agree with Wausau, because the tender in this case does not fall under any of the prongs of Section 2695.2(o)'s definition of "notice of legal action." Rather, the tender submitted by Plaintiffs on January 30, 2012 can best be categorized as a "notice of claim," which the regulations define as "any written or oral notification to an insurer or its agent that reasonably apprises the insurer that the claimant wishes to make a claim against a policy or bond issued by the insurer and that a condition giving rise to the insurer's obligations under that policy or bond may have arisen." 10 C.C.R. Section 2695.2(n). Accordingly, Wausau's duties upon receipt of the tender were governed by Section 2695.5(e), which states that:

> "(e) Upon receiving notice of claim, every insurer shall immediately, but in no event more than fifteen (15) calendar days later, do the following unless the notice of claim received is a notice of legal action:
> (1) acknowledge receipt of such notice to the claimant unless payment is made within that period of time. If the acknowledgment is not in writing, a notation of acknowledgment shall be made in the insurer's claim file and dated. Failure of an insurance agent or claims agent to promptly transmit notice of claim to the insurer shall be imputed to the insurer except where the subject policy was issued pursuant to the California Automobile Assigned Risk Program.
> (2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim;

(3) begin any necessary investigation of the claim."

As required under Section 2695(e)(1), Moore responded to the notice of the claim within 15 days and stated that Wausau had begun an investigation into coverage. See ECF No. 41-1. Moore specified the information Wausau sought from the insured in order to make a coverage determination regarding the tender. Therefore, contrary to Plaintiffs' contention, the regulations do not establish that the failure to accept tender within 40 days per se demonstrates that Wausau was in breach of its duty to provide an immediate defense.[1]

### B.    Reasonableness of Investigation Prior to Acceptance

Rather than the rigid 40 day requirement urged by Plaintiffs, cases from this District demonstrate that the question of whether an insurer has breached its duty to provide an immediate defense is a fact-bound inquiry that looks to both the insurer's diligence in accepting the tender and the insured's diligence in responding to the insurer's requests for further information regarding the claim. In Travelers Prop. v. Centex Homes (Breyer), Judge Breyer granted summary judgment in favor of an insurer, concluding the insurer's acceptance of the insured's May 2009 tenders in August and September 2009 had constituted an immediate defense as a matter of law because the insurer was permitted to undertake a reasonable investigation into whether the claims were covered before accepting the duty to defend. 2011 WL 1225982, at *4. Judge Breyer observed that the insurer's delay in accepting the tender was caused in part by the insured's failure "to promptly provide the reasonable, requested information to facilitate [the insurer's] investigation." Id.

Similarly, in Travelers Prop. Cas. Co. of Am. v. Kaufman & Broad Monterey Bay, Inc., No. 5:13-CV-04745-EJD, 2015 WL 581509, at *3 (N.D. Cal. Feb. 11, 2015), Judge Davila denied

---

[1] Although the duty to defend is often referred to as "immediate," an insurer is permitted to investigate to determine whether the claim tendered by an insured falls within the scope of the duty to defend under the relevant policy. Travelers Prop. v. Centex Homes, No. C 10-02757 CRB, 2011 WL 1225982, at *3 (N.D. Cal. Apr. 1, 2011) (hereinafter Travelers Prop. (Breyer) (citing Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co., 33 Cal.App.3d 26, 35, 108 Cal.Rptr. 737 (1973)). Thus, "where an insured tenders an underlying action but fails to provide the insurer with necessary information relevant to a coverage determination, then the insurer need not defend the action upon tender." Travelers Prop. (Conti), 2013 WL 1411135, at *2.

an insured's motion for summary judgment that its insurer had breached the duty to provide an immediate defense. There, the insured had provided the insurer with a notice of tender on July 6, 2012, but failed to respond to the insurer's July 20, 2012 request for further information, requiring the insurer to request the information again on October 29, 2012, before finally accepting the defense on November 7, 2012. Id. Judge Davila concluded that, although it was undisputed that the insurer owed a duty to defend the action in question, that "duty did not arise until [the insurer] was provided with all of the information necessary to determine the existence of coverage." Id.

Finally, in Travelers Prop. (Conti), Judge Conti denied an insurer's motion for summary judgment that it had provided an immediate defense. 2013 WL 1411135, at *12. After analyzing the California insurance regulations and determining that they did not compel a finding of per se breach, Judge Conti concluded that a jury was required to resolve the question of whether, under the "totality of the circumstances," an insurer's 135 day delay in responding to insured's tender had constituted a breach of the duty to provide an immediate defense. Id.

Although the date on which Wausau accepted the duty to defend is disputed by the parties, the Court concludes that Wausau satisfied its duty to provide an immediate defense as a matter of law. Plaintiffs argue that Wausau never clearly stated its coverage position, thereby resulting in a failure to ever assume the duty to defend, but this claim is belied by the record. Following the tender of the counterclaim on January 30, 2012, Harold Moore sent two letters on behalf of Wausau that requested further information about the claim from Plaintiffs. ECF Nos. 67-4, 67-6. These letters both stated that Wausau was reserving its rights pending its investigation of the policies. Id. Moore's March 21, 2012 letter indicated that Wausau had not yet reached a coverage determination. See ECF No. 67-6 ("[W]e believe it prudent to conduct a thorough investigation into the matter prior to making a final determination as to whether a duty to defend the Cherokee counter claims arises under the Haskins policies.").

On April 26, 2012 – three months after Plaintiffs tendered the counterclaim – Moore sent Plaintiffs a letter stating that Wausau "would like to resolve the claim as soon as possible as well as continue our investigation" into coverage. ECF No 67-8 at 2. Moore's letter suggests that

9

1  Moore may have even communicated Wausau's willingness to pursue settlement at a prior date, as
2  it references a previous conversation with Plaintiffs' lawyer Bret Stone wherein Stone objected to
3  Wausau's attempts to settle the claim with Cherokee.  Id.

4        The Court concludes that Moore's communication of Wausau's willingness to facilitate a
5  settlement on behalf of Plaintiffs constituted an acceptance of the duty to defend that was
6  sufficiently immediate in light of Wausau's course of communication with Plaintiffs regarding the
7  investigation of the claim.  Although Plaintiffs argue that Moore's communications were
8  ambiguous as they did not clearly state that Wausau accepted the defense, the communications
9  undeniably conveyed an intention to assume the defense under reservation of rights.  Moore's
10  letters initially requested additional information from Plaintiffs regarding the claims and reserved
11  Wausau's rights.  As soon as April 26, 2012, however, Moore's letters conveyed Wausau's
12  intentions of settling the claim with Cherokee on behalf of Plaintiffs.  Moore's August 14, 2012
13  email requested information regarding costs already incurred by Plaintiffs in support of the
14  defense.  ECF No. 67-13.  These communications demonstrate that Wausau had accepted its duty
15  to defend and was actively undertaking the defense of the counterclaim.

16        Plaintiffs' contention that these letters constituted a refusal to assume the defense and
17  entitled Plaintiffs to assume responsibility for its own defense is simply not credible.  "[I]f the
18  insurer wrongfully *refuses* to defend, leaving the insured to his own resources to provide a
19  defense, then the insurer forfeits the right to control settlement and defense."  Safeco Ins. Co. v.
20  Superior Court, 71 Cal. App. 4th 782, 787, 84 Cal. Rptr. 2d 43 (1999) (emphasis added).
21  However, "[a]n insurer may agree to defend a suit subject to a reservation of rights."  Blue Ridge
22  Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 497, 22 P.3d 313, 317 opinion after certified question
23  answered, 10 F. App'x 563 (9th Cir. 2001).  In such a case, "an insurer meets its obligation to
24  furnish a defense without waiving its right to assert coverage defenses against the insured at a later
25  time."  Id. (quoting Croskey et. al., Cal. Practice Guide: Insurance Litigation (The Rutter Group
26  2000) ¶ 7:723, p. 7B-61).

27        The only reasonable interpretation of Moore's letters is that Wausau was agreeing to
28

assume the defense of the counterclaim subject to a reservation of rights. If Wausau was refusing to defend, there would be no need for Wausau to reserve its rights, or to enter into settlement negotiations with Cherokee, or to request information regarding costs already incurred by Plaintiffs in connection with their defense. Plaintiffs provide no authority in support of the claim that an insurer must use certain specific words in order to be deemed to have assumed the defense. In this case, Wausau's statements and actions manifested its clear willingness to assume the defense under a reservation of rights.

Because Wausau's duty to defend "did not arise until [the insurer] was provided with all of the information necessary to determine the existence of coverage," Kaufman, 2015 WL 581509, at *3, Wausau's April 26, 2012 letter indicating that Wausau was pursuing settlement under reservation of rights satisfied its duty to provide an immediate defense. Wausau's three month investigation, during which it remained in consistent communication with Plaintiffs, was reasonable under the circumstances. See Traveler's Prop. (Breyer), 2011 WL 1225982, at *4 (finding a coverage investigation of a similar length reasonable under the circumstances). Plaintiffs' motion for summary judgment that Wausau breached its duty to defend by failing to provide an immediate defense is accordingly denied.

### III. Whether Wausau's Negotiation of a Stipulation of Dismissal Satisfied Its Duty to Defend

Wausau seeks summary judgment that it fulfilled its duty to defend by negotiating a settlement that would have resulted in the dismissal of Cherokee's counterclaims. Wausau argues that, by objecting to the settlement, Plaintiffs assumed the responsibility for providing their own defense against the counterclaims. Plaintiffs respond that Wausau forfeited its right to settle on behalf of Plaintiffs by failing to accept the duty to defend. This argument fails because the Court has already concluded that Wausau accepted the duty to defend by informing Plaintiffs that it was attempting to negotiate a settlement. Plaintiffs additionally argue that because the settlement negotiated by Wausau was never finalized and implemented, Wausau failed to fulfill its defense obligations.

Following Wausau's negotiations with Cherokee regarding the counterclaim, Cherokee

agreed to settle for $11,854.94, half of their costs incurred, ECF No. 42-2, and stipulated to a settlement of the action that resulted in Cherokee's filing of a motion for leave to file dismissal of the counterclaims. Haskins I at ECF No. 68. Plaintiffs filed an opposition to Cherokee's motion to dismiss the counterclaim, id. at ECF No. 75, and, following a mediation between Plaintiffs and Cherokee that Wausau did not attend, Cherokee subsequently withdrew its motion. Id. at ECF No. 91. Plaintiffs then settled with Cherokee around Wausau, purporting to bind Wausau to a $1.7 million judgment. Plaintiffs argue that Wausau's proposed settlement was inadequate as, although it would have resulted in a dismissal of the counterclaims for past costs with prejudice, it would have only dismissed Cherokee's counterclaims for future costs without prejudice. Plaintiffs therefore contend that they did not breach their duty to cooperate by objecting to the settlement because it would not have fully and finally disposed of the litigation.

To answer the question of whether Wausau's proposed settlement was adequate, the Court looks to both the scope of Plaintiffs' policy and the demands made in counterclaim. Plaintiffs' policies with Wausau stated that Wausau "may make such investigation and settlement of any claim or suit as it deems expedient." ECF Nos. 36-1 through 36-6. An insurer's duty to defend "is discharged when the action is concluded." Buss v. Superior Court, 16 Cal. 4th 35, 46 (1997). "Where there is no suit, there is no duty to defend." Forster–Gardner. Inc. v. National Union Fire Ins. Co., 18 Cal.4th 857, 879 (1998) (quoting City of Edgerton v. General Cas. Co., 517 N.W.2d at 477); see also H. Croskey, R. Heeseman, J. Ehrlich, P. Klee, California Practice Guide: Insurance Litigation ¶ 7:651 (looseleaf 2015) ("The insurer's duty to defend continues until the third party litigation ends[.]"). Wausau negotiated a proposed settlement with Cherokee that would have concluded the litigation against Plaintiffs. Once it did that, it satisfied its duty to Plaintiffs.

Somewhat surprisingly, the parties have not cited – and the Court has not located – authority regarding whether obtaining a dismissal without prejudice satisfies an insurer's obligation to defend. The Court nevertheless concludes that Wausau discharged its duty to provide a complete defense by negotiating a settlement which would have resulted in the dismissal with prejudice of Cherokee's claim for past costs, even though the dismissal of Cherokee's

counter-claim for a declaration regarding future costs was without prejudice. Absent Plaintiffs' intervention, that settlement would have resulted in the dismissal of the entire counterclaim for costs incurred against Plaintiffs. The Court therefore concludes that Wausau's attempted settlement with Cherokee satisfied its duty to defend.

### IV. Whether Plaintiffs Breached the Duty to Cooperate and No Voluntary Payments Provisions

Wausau argues that, because Wausau satisfied its duty to defend, Plaintiffs' interference with Wausau's defense constituted a breach of their duty to cooperate and the no voluntary payments provision of the insurance policy. When an insurer accepts its duty to defend, the insured typically "has no right to interfere" with the insurer's management of its defense. Safeco, 71 Cal.App.4th 782, 787. "[I]t is only when the insured has requested and been denied a defense by the insurer that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent." Gribaldo v. Agrippina Versicherunges A. G., 3 Cal.3d 434, 449 (Cal.1970). "[A]n insurer that is providing a defense generally has an absolute right to decide whether to settle claims against the insured. The insured has no right to settle directly with the claimant (injured party) without the insurer's consent." California Practice Guide: Insurance Litigation Ch. 7B-A. Under a no voluntary payments provision, the insurer is "not liable for any . . . payments, expenses, or other obligations assumed by the insured without the insurer's consent." Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal.App.4th 966, 981 (Cal.Ct.App.2000).[2]

Defendant relies upon Blue Ridge Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 502 (2001), for the proposition that "an insurer may give the insured the option to assume its own defense when the insured disagrees with the insurer's decision to enter into a settlement with the claimant." ECF No. 61 at 19. In that case, the California Supreme Court answered a certified question from the Ninth Circuit asking "Whether an insurer defending a personal injury suit under a reservation of

---

[2] Although the parties agreed to multiple policies during this period, several of which are attached at ECF Nos. 36-1 through 36-7, the policies all contain similar provisions regarding the duty to cooperate and the prohibition on voluntary payments.

rights may recover settlement payments made over the objection of the insured when it is later determined that the underlying claims are not covered under the policy." Id. Blue Ridge held that an insurer "satisfied the prerequisites for seeking reimbursement for noncovered claims included in a reasonable settlement payment" by providing "(1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." Blue Ridge, 25 Cal. 4th at 502.

Here, Defendant notified Plaintiffs on August 8, 2012 that they had until August 10, 2012 to object to the settlement and, if they objected, they would be assuming the costs for their own defense and indemnity. ECF No. 67-11. Blue Ridge is not directly on point, as that case involved the steps that an insurer must take to seek reimbursement for a settlement payment made by the insurer under reservation of rights for a claim that is later found to not be covered by the terms of the policy. Here, the Court has already determined the counterclaim was covered under the terms of the policy. Moreover, Wausau has not made any settlement payment, as Plaintiffs interfered with the settlement, prompting Cherokee to withdraw its initial offer and settle around Wausau for a far greater sum, which has not yet been paid.

While distinguishable on its facts, the Court nonetheless agrees with Wausau that Blue Ridge is instructive. It demonstrates that, once an insurer has procured a reasonable settlement offer that the insured opposes, the insurer may extend "an express offer to the insureds that they may assume their own defense costs." Blue Ridge, 25 Cal. 4th at 502. Wausau did so here. Plaintiffs, by continuing to object to the settlement in violation of the cooperation provision, and entering into a settlement with Cherokee that purported to bind Wausau, in violation of the no-voluntary payments provision, assumed their own defense costs. See, e.g., ECF No. 36-1 at 6 ("The insured shall co-operate with the company and, upon the company's request, shall . . . effect in effecting settlement . . . The insured shall not, except at his own costs, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and

14

surgical relief to other as shall be imperative at the time of injury.").

A no voluntary payments "provision is enforceable posttender until the insurer wrongfully denies tender." Low v. Golden Eagle Ins. Co., 110 Cal. App. 4th 1532, 1546-47 (2003). "[I]t is only when the insured has requested *and been denied a defense by the insurer* that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent and under the compulsion of that refusal undertake his own defense at the insurer's expense." Id. (quoting Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A., 3 Cal. 3d 434, 449, 476 P.2d 406, 415 (1970)). As previously discussed, Wausau did not *deny* Plaintiffs request for a defense; it undertook the defense and successfully resolved the claim. Therefore, Plaintiffs were not free to undertake their own defense at Wausau's expense. Doing so was a violation of the terms of the policy.

Wausau's motion for summary judgment that Plaintiffs violated the cooperation and no voluntary payments provisions of the policy, thereby assuming the responsibility for the costs incurred, is hereby granted.[3]

## III.    Conclusion

Wausau fully satisfied its duty to defend by undertaking a defense of the counterclaim following a reasonable investigation into coverage and negotiating a settlement that would have dismissed all claims for past costs with prejudice. Plaintiffs breached the cooperation and no voluntary payments provisions of the policies. Therefore, Plaintiffs assumed the costs of their own defense.

The Court therefore denies Plaintiffs' motion for partial summary judgment that Wausau breached its duty to defend. The Court grants Wausau's motion for partial summary judgment that it did not breach its duty to defend and that Plaintiffs assumed the responsibility for their own

---

[3] Defendants have moved for summary judgment that they have paid for Plaintiffs' defense costs incurred prior to the Plaintiffs' breach of the cooperation provision. Following the Court's partial summary judgment ruling that Wausau owed Plaintiffs a duty to defend against the counterclaim, Wausau paid Plaintiffs $12,130.23. Plaintiffs' allege that they incurred $600,000 in attorneys' fees and other costs in defending the action. Neither party explains its proposed figures with sufficient detail for the Court to rule as to whether Wausau has compensated Plaintiffs for defense costs incurred prior to Wausau's assumption of the duty to defend.

defense.

The Court hereby sets a Case Management Conference on September 16, 2015 at 2:00 p.m. The parties are directed to file a Joint Case Management Statement by September 9, 2015 setting forth the remaining steps required to conclude the litigation in light of this order.

IT IS SO ORDERED.

Dated: August 26, 2015

_____
JON S. TIGAR
United States District Judge